## MORTGAGE

THIS MORTGAGE is made this ___3rd___ day of _____April_____ ,
2005, between Hana F. Al Jader _____ ,
presently residing at _62 Cambridge Street, Winchester, Massachusetts_
(herein "Mortgagor(s)"), and the Clerk of the United States
District Court for the District of Massachusetts, John
Joseph Moakley United States Courthouse Building, Boston,
Massachusetts (herein "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for _____Hana F. Al Jader_____ (herein
"Defendant"), in Criminal No. 05 CR 10085 RCL _____, before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of _One Million_
(_$1,000,000.00_____) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated _____April 1_____ , _2005_, and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
_____Middlesex_____ , Commonwealth of Massachusetts,
and more particularly described in the following deed:

A deed from _Hana F. Al Jader, Trustee of Aljader Realty Trust_
to _Hana F. Al Jader_____
dated _September 19_____ , _2003_, and recorded in the
_Middlesex_____ County Registry of Deeds at
Book _41030____ , Page _479___ ;

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

1.   That the Mortgagor(s) shall pay the indebtedness as hereinbefore provided.

2.   That the Mortgagor(s) will keep the Property insured against loss by fire or hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagor(s) will assign and deliver the policies to the Mortgagee; and that the Mortgagor(s) will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagor(s)'s default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3.   That the Mortgagor(s) shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4.   That the Mortgagor(s) will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagor(s).

5.   That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagor(s), or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6.   That notice and demand or request may be made in writing and may be served in person or by mail.

7.   That the Mortgagor(s) will warrant and defend the title to the Property against all claims and demands.

8.   That the Mortgagor(s) will create no further encumbrances of any kind against the Property.

(mortgage.frm - 12/94)

-3-

9.  That the Mortgagor(s), in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagor(s) to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10.  That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11.  Notwithstanding any other agreement between the Mortgagor(s) and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor(s) to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor(s).


_____        _____
                                 Hana F. Al Jader


_____        _____


COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                      April 3, 2005

     On this 3rd day of April, 2005, before me, the undersigned notary public, personally appeared Hana F. Al Jader, and proved to me through satisfactory evidence of identification, which was _Mass Driver's License_ to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.


                    _Deborah A. Gunkel_
                    Deborah A. Gunkel, Notary Public
                    My Commission expires:



DEBORAH A. GUNKEL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 7/16/2010

THIS MORTGAGE is made this ___3rd___ day of ___April___
2005, between Hana F. Al Jader
presently residing at 33 Cambridge Street, Winchester, Massachusetts
(herein "Mortgagor(s)"), and the Clerk of the United States
District Court for the District of Massachusetts, John
Joseph Moakley United States Courthouse Building, Boston,
Massachusetts (herein "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for ___Hana F. Al Jader___ (herein
"Defendant"), in Criminal No. 05 CR 10085 RCL ___, before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of _One Million_
(_$1,000,000.00_____) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated ___April 1___, 2005, and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
___Middlesex___, Commonwealth of Massachusetts,
and more particularly described in the following deed:

A deed from Hana F. Al Jader, Trustee of Aljader Realty Trust
to Hana F. Al Jader
dated September 19 ___, 2003, and recorded in the
Middlesex ___ County Registry of Deeds at
Book 41030 ___, Page 479 ;

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

_(in left margin, rotated)_ 33 Mystic St. Arlington, Mass.

(mortgage.frm - 12/94)

MDSX. SO. DIST. DEEDS
BOOK _44947_____ PAGE _187_
DATE: _4/5/05_
TIME: _3:07 pm_

PLEASE RETURN AFTER RECORDING TO:

Clerk
United States District Court
 for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

<u>MORTGAGE</u>

THIS MORTGAGE is made this _____ day of April 2005 ,
19__, between Ammar Chamo and     Hana F. Al Jaiar ,
presently residing at a time no address at 40 Cambridge St. Winchester
(herein "Mortgagor(s)"), and the Clerk of the United States  Mass
District Court for the District of Massachusetts, John W.
McCormack Post Office & Courthouse Building, Boston,
Massachusetts (herein "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for   Hana F. Al Jaiar                (herein
"Defendant"), in Criminal No. 05 CR 10085 RCL , before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of  one million
(\$ 1,000,000.00 ) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated April 1 , 19 2005 and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
 Middlesex , Commonwealth of Massachusetts,
and more particularly described in the following deed:

A deed from  Gennaro Cella and Pearl Cella
to Ammar Chamo and Hana Aljader, joint tenants right ofsurvivor-
dated   July 13, 2001  , 19 , and recorded in the  ship
 Middlesex County Registry of Deeds at
Book 33250 , Page 379 ;

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

(mortgage.frm - 12/94)

MDSX. SO. DIS. DEEDS
BOOK 44747 PAGE 170
DATE: 4/1/05
TIME: 3:12 PM

-2-

1.  That the Mortgagor(s) shall pay the indebtedness as hereinbefore provided.

2.  That the Mortgagor(s) will keep the Property insured against loss by fire or hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagor(s) will assign and deliver the policies to the Mortgagee; and that the Mortgagor(s) will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagor(s)'s default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3.  That the Mortgagor(s) shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4.  That the Mortgagor(s) will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagor(s).

5.  That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagor(s), or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6.  That notice and demand or request may be made in writing and may be served in person or by mail.

7.  That the Mortgagor(s) will warrant and defend the title to the Property against all claims and demands.

8.  That the Mortgagor(s) will create no further encumbrances of any kind against the Property.

(mortgage.frm - 12/94)

-3-

9.     That the Mortgagor(s), in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagor(s) to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10.    That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11.    Notwithstanding any other agreement between the Mortgagor(s) and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor(s) to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor(s).

_____          _____
                                   Amar Chamo

_____          _____
                                   Hana F. Al Jader

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                          April 5, 2005

On this 5th day of April 2005, before me, the undersigned notary public, personally appeared Ammar Chamo, and proved to me through satisfactory evidence of identification, which was _Mass Drivers License_ to be the person whose name is signed on the preceding document, and acknowledge to me that he signed it voluntarily for its stated purpose.

_____
Karen M. Bisnaw, Notary Public
My commission expires:

-4-

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                    April 5, 2005


On this 5th day of April 2005, before me, the undersigned notary public, personally appeared Hana F. Al Jader, and proved to me through satisfactory evidence of identification, which was _Mass Drivers License_ to be the person whose name is signed on the preceding document, and acknowledge to me that he signed it voluntarily for its stated purpose.

Karen M. Bisnaw, Notary Public
My commission expires:

ESCROW AGREEMENT

ESCROW AGREEMENT entered into this ___3rd___ day of _____
___April_____, 2005 , among __Hana F. Al Jader_____
(herein "Surety"), Michael J. Sullivan in his official capacity as
United States Attorney for the District of Massachusetts (herein
"United States Attorney"), and Tony Anastas, in his official
capacity as Clerk of the United States District Court for the
District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of
___Hana F. Al Jader_____ (herein "Defendant") in
Criminal No. ___05 CR 10085 RCL_____, on the terms and
conditions of bail set forth in an Order Setting Conditions of
Release (herein "Bail Order") dated _____April 1_____, 2005 ,
and entered by the Honorable _Joyce London Alexander_____,
United States District Judge/Magistrate Judge, and has agreed to
execute a personal bond in the amount of _One Million_____
_____ ($ 1,000,000.00 ) Dollars (herein "Personal
Bond") to secure the Defendant's compliance with the terms and
conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and
agreements contained herein, the parties hereto agree as follows:
1.   The Surety shall execute a quitclaim deed to the parcel of
real property located at 339 Mystic Street, Arlington, Massachusetts 02474
_____ in favor of the United States of America,
and deliver said deed to the Escrow Agent to be held in escrow
pursuant to the terms of this Agreement.

2.   The Surety further agrees to execute any additional documents
and take any action necessary to effectuate the transfer of said
parcel of real property and facilitate the sale of such property
in the event that the Defendant is in default of the terms and
conditions of the Bail Order or Personal Bond.

3.   The Escrow Agent shall hold the quitclaim deed in escrow
under the following terms and conditions:

    A.   In the event that the Defendant fails to appear as
required at all proceedings in Criminal No. 05 CR 10085 RCL_____
or otherwise violates any condition of bail, and Defendant is
declared to be in default by a judicial officer of the United
States District Court for the District of Massachusetts, then,
upon order of the Court, and in lieu of or in addition to
foreclosure proceedings on any mortgage granted by the Surety,
the Escrow Agent shall tender the quitclaim deed to the United
States Attorney, and he shall cause the same to be immediately
recorded without notice to the Surety.  Any requirement that
foreclosure proceedings be commenced upon any mortgage granted by
the Surety in connection with Criminal No. _05 CR 10085 RCL_____
is expressly waived by the Surety.

(escrow.frm - 10/96)

E.  This Agreement shall terminate upon the final disposition of Criminal No.  05 CR 10085 RCL  and written discharge of the bond provided to the Surety by the United States of America.  Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to the Surety.

5.  The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6.  This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETY:

TONY ANASTAS, CLERK OF COURT

                                       Hana F. Al Jader
By:  _____
          Deputy Clerk

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:  _____
          Asst. U.S. Attorney
          S. Theodore Merritt

               _____

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                        April 3, 2005

       On this 3rd day of April, 2005, before me, the undersigned notary public, personally appeared  Hana F. Al Jader  , and proved to me through satisfactory evidence of identification, which was  Mass  Driver's License  to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

                              _____
                              Deborah A. Gunkel, Notary Public
                              My Commission expires:



DEBORAH A. GUNKEL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 7/16/2010

ESCROW AGREEMENT

ESCROW AGREEMENT entered into this ___5th___ FILED
___April___, 2005 , among ___Ammar Chamo__ and __Hana F. Al Jader__
(herein "Surety"), Michael J. Sullivan in his official capacity as
United States Attorney for the District of Massachusetts (herein
"United States Attorney"), and Tony Anastas, in his official
capacity as Clerk of the United States District Court for the
District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of
___Hana F. Al Jader_____ (herein "Defendant") in
Criminal No. __05 CR 10085 RCL_____, on the terms and
conditions of bail set forth in an Order Setting Conditions of
Release (herein "Bail Order") dated _____April 1_____, 2005 ,
and entered by the Honorable _Joyce London Alexander_____,
United States District Judge/Magistrate Judge, and has agreed to
execute a personal bond in the amount of _One Million_
_____ ($ 1,000,000.00 ) Dollars (herein "Personal
Bond") to secure the Defendant's compliance with the terms and
conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and
agreements contained herein, the parties hereto agree as follows:
1.   The Surety shall execute a quitclaim deed to the parcel of
real property located at __62 Cambridge Street, Winchester, MA__
_____ in favor of the United States of America,
and deliver said deed to the Escrow Agent to be held in escrow
pursuant to the terms of this Agreement.

2.   The Surety further agrees to execute any additional documents
and take any action necessary to effectuate the transfer of said
parcel of real property and facilitate the sale of such property
in the event that the Defendant is in default of the terms and
conditions of the Bail Order or Personal Bond.

3.   The Escrow Agent shall hold the quitclaim deed in escrow
under the following terms and conditions:

     A.   In the event that the Defendant fails to appear as
required at all proceedings in Criminal No. _05 CR 10085 RCL__
or otherwise violates any condition of bail, and Defendant is
declared to be in default by a judicial officer of the United
States District Court for the District of Massachusetts, then,
upon order of the Court, and in lieu of or in addition to
foreclosure proceedings on any mortgage granted by the Surety,
the Escrow Agent shall tender the quitclaim deed to the United
States Attorney, and he shall cause the same to be immediately
recorded without notice to the Surety. Any requirement that
foreclosure proceedings be commenced upon any mortgage granted by
the Surety in connection with Criminal No. __05 CR 10085 RCL___
is expressly waived by the Surety.

(escrow.frm - 10/90)

-2-

B.    This Agreement shall terminate upon the final deposition of Criminal No. 05 CR 10085 RCL and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to Surety.

5.    The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6.    This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETY:

TONY ANASTAS, CLERK OF COURT

By:                                    _____
    Deputy Clerk                       Ammar Chamo

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY                 _____
                                       Hana F. Al Jader
By:

    Asst. U.S. Attorney                _____
    S. Theodore Merritt

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                              April 5, 2005

        On this 5th day of April, 2005, before me, the undersigned notary public, personally appeared Ammar Chamo, and proved to me through satisfactory evidence of identification, which as Mass Drivers Licence to be the person whose name signed on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose.

                              _____
                              Karen M. Bisnaw, Notary Public
                              My Commission expires:

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                          April 5, 2005

On this 5th day of April, 2005, before me, the undersigned notary public, personally appeared ~~Ammar Chamie~~ HRORI, AL JACEI and proved to me through satisfactory evidence of identification, which as Mass Drivers License to be the person whose name signed on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Karen M. Bisnaw, Notary Public
My Commission expires:

# QUITCLAIM DEED

I, Hana F. Al Jader, of 62 Cambridge Street, Winchester, Massachusetts, for One Dollar ($1.00) and other valuable consideration

grant to the Clerk of the United States District Court for the District of Massachusetts

with quitclaim covenants a certain parcel of land with the buildings thereon situated in Arlington on the easterly side of Mystic Street, being shown as Lot D on a plan recorded Middlesex (So.Dist.) Deeds as plan Number 52 in 1939 and bounded:

WESTERLY          on Mystic Street, 110 feet;

NORTHERLY         on land now or formerly of Herbert Stevens, et al., 379. 57 feet;

EASTERLY          on Mystic Lake, 111 feet; and

SOUTHERLY         on Lot C on said plan, 367 feet.

Containing 40,620 square feet, or however otherwise said premises may be bounded and described, all or any of said measurements or contents more or less. Said above mentioned plan is entitled "Plan of Land in Arlington Mass." dated January 1935, by William S. Crocker, Civil Engineer, recorded with said Deeds.

Said premises are conveyed subject to restrictions of record so far as to the same are now force and applicable.

For Grantor's title, see deed dated September 19, 2003, and recorded at the Middlesex South Registry of Deeds in Book 41030, Page 479.

Executed as a sealed instrument this 3rd day of April 2005.

Hana F. Al Jader

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

April 3, 2005

On this 3rd day of April, 2005, before me, the undersigned notary public, personally appeared Hana F. Al Jader, and proved to me through satisfactory evidence of identification, which was Mass Drivers License to be the person whose name is signed on the preceding document, and acknowledge to me that she signed it voluntarily for its stated purpose.

Deborah A. Gunkel, Notary Public
My commission expires:

DEBORAH A. GUNKEL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 7/16/2010

Property address: 339 Mystic Street, Arlington, Massachusetts

Lender or Client:    BLS Funding Corp.
55 Cambridge Street
Burlington, MA 01803

| Item | Total |
|------|-------|
| APPRAISAL FEE FOR SERVICES RENDERED | $      300.00 |
| BORROWER PAID AT THE TIME OF INSPECTION | -300.00 |

Borrower: Chammo, Ammar
62 Cambridge Street
Winchester , MA  01890
Middlesex County Registry of Deeds - Book:33250  Page:379

Total:     $

**Thank you**

# COMPLETE SUMMARY APPRAISAL REPORT OF

# THE PROPERTY LOCATED AT

62 Cambridge Street

Winchester , MA  01890

## as of

October 1, 2004

## for

BLS Funding Corp.
55 Cambridge Street
Burlington, MA 01803

## by

RADIUS APPRAISAL

P.O. Box 290203
Charlestown, MA 02129



Copyright ©1988-1997 Microsoft Corporation and/or its suppliers. All rights... web site at http://maps.expedia.com

| Location | | [X] Over 75% | 25-75% | | Under 25% | | Occupancy | PRICE (000) | AGE (yrs) | | | One Family | 90 | | [X] Not Likely | | Likely |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Built up | [X] Over 75% | 25-75% | | Under 25% | | | | 3 (000) | | | | One Family | 90 | | | | In process |
| Growth rate | | Rapid | [X] Stable | | Slow | | [X] Owner 95 | 400 Low | New | 2-4 fam | 5 | | | | | |
| Property values | [X] Increasing | | Stable | | Declining | | Tenant | 2400+ High | 150+ | Multi-family | | | To | | | |
| Demand/supply | | Shortage | [X] In balance | | Over supply | | [X] Vacant (0-5%) | Predominant | | Commercial | 5 | | | | | |
| Marketing time | [X] Under 3 mos | | 3-6 mos | | Over 6 mos | | Vacant (over 5%) | 950+ | 100 | | | | | | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Neighborhood boundaries consist of Church/High Street to the north, west by Arlington Street, east and south by Upper Mystic Lake.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): In general the Winchester market indicates an increase in the demand for residential properties, at this time, which has promoted increasing values. Major roadways such as Routes 38, 93, and 28, which are located within 1 mile, provide direct access to centralized employment areas as well as to other areas of the community. The commercial influence in the neighborhood consists of small businesses, which are not located on the street, but within 1 mile. *** See Additional Comments ***

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): The appraiser notes that the typical marketing time for properties within the subjects general neighborhood is currently within 1-3 months. This includes properties which are priced competitively allowing for adequate market exposure within a reasonable period of time.

Project Information for PUDs    (If applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)?    [ ] Yes    [ ] No
Approximate total number of units in the subject project: N/A    Approximate total number of units for sale in the subject project: N/A
Describe common elements and recreational facilities: N/A

| Dimensions | Refer to Deed | | | | Topography | Sloping |
|---|---|---|---|---|---|---|
| Site area | 22,279 Square Feet | | | | Size | 22,279 Square Feet |
| Specific zoning classification and description | RDB (10,000 SF & 100' Frontage mins.) | | Corner Lot [ ] Yes [X] No | | Shape | Rectangular |
| Zoning compliance [X] Legal | | Legal nonconforming (Grandfathered use) [ ] | Illegal [ ] | No zoning | Drainage | Appears Adequate |
| Highest & best use as improved: [X] Present use | | Other use (explain) | | | View | Other Homes |

| Utilities | Public | Other | Off-site improvements | Type | Public | Private | | Landscaping | Typical Neighborhood |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Asphalt Paved | [X] | | | Driveway Surface | Paved/Adequate |
| Gas | [X] | | Curb/gutter | Granite | | | | Apparent easements | None Noted |
| Water | [X] | | Sidewalk | Asphalt Paved | [X] | | | FEMA Special Flood Hazard Area [ ] Yes [X] No | |
| Sanitary sewer | [X] | | Street lights | Standard | [X] | | | FEMA Zone C | Map Date 06/18/80 |
| Storm sewer | [X] | | Alley | None | | | | FEMA Map No. 250228 0004 B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): The subject does not appear to be located in a HUD identified Flood Zone Area. The subject is a legal conforming lot, offering sufficient frontage and lot area. There were no apparent adverse easements, encroachments, or other conditions noted.

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | Slab | Slab | Yes/100% | Area Sq. Ft. | N/A | Roof | Code [X] |
| No. of Stories | 2.00 | Exterior Walls | Brck/Wd Shngl | Crawl Space | N/A | % Finished | N/A | Ceiling | Code [X] |
| Type (Det./Att.) | Detached | Roof Surface | Asphalt Shngl | Basement | N/A | Ceiling | N/A | Walls | Code [X] |
| Design (Style) | Colonial | Gutters & Dwnspts. | Aluminum | Sump Pump | N/A | Walls | N/A | Floor | Code [X] |
| Existing/Proposed | Existing | Window Type | Roll-Out | Dampness | N/A | Floor | N/A | None | |
| Age (Yrs.) | 23 | Storm/Screens | Yes | Settlement | N/A | Outside Entry | N/A | Unknown | |
| Effective Age (Yrs.) | 8 | Manufactured House | No | Infestation | N/A | | | | Appears Typical |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | N/A |
| Level 1 | X | 1 | X | 1 | | | | 2 | 2 | X | | 2116 |
| Level 2 | | 1 | | 1 | 1 | | | 3 | 1.5 | X | | 2124 |

Finished area above grade contains: 9 Rooms; 5 Bedroom(s); 3.50 Bath(s); 4,240 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Marble/Wd/Avg-Gd | Type | FHA | Refrigerator | [X] | None | | Fireplace(s) # 2 | [X] | None [ ] | |
| Walls | Plaster/Avg-Good | Fuel | Oil | Range/oven | [X] | Stairs | [X] | Patio 1 | [X] | Garage | # of cars |
| Trim/Finish | Wood/Avg-Good | Condition | Avg-Gd | Disposal | [X] | Drop Stair | | Deck | | Attached | |
| Bath Floor | Marble/Avg-Good | COOLING | | Dishwasher | [X] | Scuttle | | Porch | | Detached | |
| Bath Wainscot | Marble/Tile/Avg-Gd | Central | Yes | Fan/Hood | [X] | Floor | [X] | Fence | | Built-in | |
| Doors | Wood/Avg-Good | Other | N/A | Microwave | | Heated | | Pool | | Carport | |
| | | Condition | Avg-Gd | Washer/Dryer | | Finished | | Balcony 2 | [X] | Driveway | Paved |

Additional features (special energy efficient items, etc.): The subject offers additional features such as; 2 balcony's, a patio, 2 fireplaces and views of Mystic Lake.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 62 Cambridge Street Winchester | 43 Arlington Street Winchester | | 4 Ravenscroft Road Winchester | | 42 Cabot Street Winchester | |
| Proximity to Subject | | .3 Miles | | .4 Miles | | .6 Miles | |
| Sales Price | $ N/A | $ 1,900,000 | | $ 1,795,000 | | $ 1,801,250 | |
| Price/Gross Liv. Area | $ N/A | $ 323.24 | | $ 398.89 | | $ 410.87 | |
| Data and/or Verification Source | Inspection, B&T & Assr. Dept. | Assessor, MLS Banker & Tradesman | | Assessor, MLS Banker & Tradesman | | Assessor, MLS Banker & Tradesman | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conventional None Known | | None Known Closed Sale | | Conventional None Known | |
| Date of Sale/Time | | 4/29/2004 | | 8/20/2004 | | 6/30/2004 | |
| Location | Average/Good | Average/Good | | Average/Good | | Average/Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 22,278 SF | 20,058 SF | | 13,939 SF | | 12,967 SF | |
| View | Waterview | Other Homes | +25,000 | Other Homes | +25,000 | Other Homes | -25,000 |
| Design and Appeal | Colonial/Avg | Colonial/Avg | | Colonial/Avg | | Colonial/Avg | |
| Quality of Construction | Average/Good | Average/Good | | Average/Good | | Average/Good | |
| Age | 23+ | 5+ | | 94+ | | 82+ | |
| Condition | Good | Superior | -47,500 | Good | | Good | |
| Above Grade | Total 9 / Bdrms 5 / Baths 3.50 | Total 10 / Bdrms 5 / Baths 4.5 | -6,000 | Total 13 / Bdrms 6 / Baths 3F2H | -3,000 | Total 10 / Bdrms 5 / Baths 3.5 | |
| Room Count | | | | | | | |
| Gross Living Area | 4,240 Sq.Ft. | 5,878 Sq.Ft. | -49,100 | 4,500 Sq.Ft. | -7,800 | 4,384 Sq.Ft. | -4,300 |
| Basement & Finished Rooms Below Grade | Slab N/A | Full Basement Unfinished | -5,000 | Full Basement Finished | -5,000 -5,000 | Full Basement Finished | -5,000 -5,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FHW/Central AC | FHW/Central AC | | FHW/Central AC | | FHA/Central AC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | Driveway | 3 Car Built In | -15,000 | 2 Car Detached | -10,000 | 2 Car Detached | -10,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | 2 Balconies, Patio 2 Fireplaces | Balcony, Patio 4 Fireplaces | +2,500 -5,000 | Porch, Deck 4 Fireplaces | +2,500 -5,000 | Deck, Patio 1 Fireplace | +2,500 +2,500 |
| Fence, Pool, etc. | | | | | | | |
| Net Adj. (total) | | [ ] + [X] - $ | -100,100 | [ ] + [X] - $ | -8,300 | [X] + [ ] - $ | 5,700 |
| Adjusted Sales Price of Comparable | | Gross 8.2% Net -5.3% $ 1,799,900 | | Gross 3.5% Net -0.5% $ 1,786,700 | | Gross 3.0% Net 0.3% $ 1,806,950 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): Any variation in living area, which exceeds 100+- S.F. was adjusted $30 per S.F., reflecting its affect on market demand. The lots of the comparables offer marketability similar to that of the subject, no adjustment for lot size variation could be supported by market reaction. Sale 1 was adjusted for superior condition based on external observation and conversations with local brokers. All three sales were adjusted for inferior views. In determining a final value estimate, the indicated adjustments were derived from research and analysis of relevant market data from within the marketing area.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | See Below | Per Banker & Tradesman No other Sales Activity within Last 36 Months | Per Banker & Tradesman No other Sales Activity Within Last 36 Months | Per Banker & Tradesman No other Sales Activity Within Last 36 Months |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: Banker and Tradesman Reports and MLS indicated that there has been no sales activity of subject noted over the past 36 months.

INDICATED VALUE BY SALES COMPARISON APPROACH   $ 1,800,000

INDICATED VALUE BY INCOME APPROACH   (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A

This appraisal is made [X] "as is" [ ] subject to the repairs, alterations, inspections or conditions listed below [ ] subject to completion per plans and specifications.

Conditions of Appraisal: The appraisal is made in "as is" condition.

Final Reconciliation: Primary weight is placed on the Direct Sales Comparison, which is considered the best indicator of value for the subject property. The Income Approach was not considered applicable, since the renting of single family homes is not common for the area. *** See Additional Comments ***

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF October 1, 2004



## COMPARABLE #1

43 Arlington Street
Winchester

| | |
|---|---|
| Price | $1,900,000 |
| Price/SF | 323.24 |
| Date | 4/29/2004 |
| Age | 5+ |
| Room Count | 10-5-4.5 |
| Living Area | 5,878 |

**Value Indication**   $1,799,900



## COMPARABLE #2

4 Ravenscroft Road
Winchester

| | |
|---|---|
| Price | $1,795,000 |
| Price/SF | 398.89 |
| Date | 8/20/2004 |
| Age | 94+ |
| Room Count | 13-6-3F2H |
| Living Area | 4,500 |

**Value Indication**   $1,786,700



## COMPARABLE #3

42 Cabot Street
Winchester

| | |
|---|---|
| Price | $1,801,250 |
| Price/SF | 410.87 |
| Date | 6/30/2004 |
| Age | 82+ |
| Room Count | 10-5-3.5 |
| Living Area | 4,384 |

**Value Indication**   $1,806,950



FRONT VIEW OF
SUBJECT PROPERTY

REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE OF
SUBJECT PROPERTY

property 'r    ?rteren    ''    less    ?ttnrarttr.rte    the    'ubted    nraer'v 'ttrn    '    '    '     'ttrrreanahe
adjusted sales price of the comparable.

2.    I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.    I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.    I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.    I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.    I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.    I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.    I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.    I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    62 Cambridge Street, Winchester , MA  01890

**APPRAISER:**

Signature: _Ed Mazurkiewicz_
Name: Edward Mazurkiewicz
Date Signed: October 2, 2004
State Certification #: MA RA #70556
or State License #:

**SUPERVISORY APPRAISER**  (only if required):

Signature:
Name:
Date Signed:
State Certification #:
or State License #:

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concessions but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

CONTINGENT AND LIMITING CONDITIONS:    The appraiser's certification that appears in the appraisal report is subject to the following conditions.

1.    The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.    The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.    The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.    The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.    The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. The separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.    The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.    The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.    The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.    The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.    The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any





| SUMMARY | SQ FT AREA | PERIMETER | AREA CALCULATION DETAILS |
|---|---|---|---|
| Living Area | | | First Floor |
| First Floor | 2116 | 192 | 59.0  X  35.0 =  2065.0 |
| Second Floor | 2124 | 190 | 17.0  X  1.0 =  17.0 |
| Total | 4240 | 382 | 34.0  X  1.0 =  34.0 |
| | | | Total  2116.0 |
| | | | Second Floor |
| | | | 59.0  X  36.0 =  2124.0 |



Community Panel Number
250228 0004 B

Effective Date:
June 18, 1980

Please note that this document is considered a SUMMARY APPRAISAL REPORT, in accordance with the Uniform Standards of Professional Appraisal Practice under Standards Rule 2-2(b) of a complete or limited appraisal performed under Standard 1. All supporting data and research information has been retained in our files. The intended use of this appraisal report is for mortgage/ finance purposes. The intended user of this report is BLS Funding Corp.

## NEIGHBORHOOD MARKETABILITY
This commercial use appears market accepted, with no negative affects to marketability anticipated. There were no apparent adverse conditions noted in the neighborhood, which were considered detrimental to the overall marketability of the subject.

## COST APPROACH
The estimated remaining economic life is based on the estimated economic life (65 years) minus the estimated effective age. The estimated land value exceeds 30%, which is typical of waterview properties, water front properties, or properties which are located within close proximity to water related amenities. These properties commonly demand a higher value due to increased desirability and appeal.

## FINAL RECONCILIATION
The Cost Approach is given minimal weight and not considered the most reliable value indicator due to the age of the subject and the difficulty in accurately estimating the replacement cost and accrued depreciation for the structure for this older style of home and due to the difficulty in accurately estimating a value for the site. Please note that this document is considered a SUMMARY APPRAISAL REPORT. All supporting data and research information has been retained in our files. The appraisers have signed this appraisal report utilizing electronic signatures. This is permitted under the Statement on Appraisal Standards No. 8 (SMT-8) of USPAP. The appraisers certify that safeguards for the protection and affixation of the signatures dictated by USPAP have been observed.

Boston, MA 02124

Telephone Number: 617-688-1450          Fax Number: 617-249-0268

**DATE**

3/7/2005

TO:

Darwin M. Harris

Peoples Choice Mortgage

420 North Main Street

Randolph, MA 02368

Telephone Number: 781-986-4004          Fax Number: 781-986-4646

Alternate Number:          E-Mail: dharris@peopleschoicemtg.com

**REFERENCE**

Internal Order #:

Lender Case #:

Client File #:

Main File # on form:

Other File # on form:

Federal Tax ID:          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

Employer ID:

## DESCRIPTION

| | |
|---|---|
| Lender: Peoples Choice Mortgage | Client: Peoples Choice Mortgage |
| Purchaser/Borrower: Hana F Aljader | |
| Property Address: 339 Mystic Street | |
| City: Arlington | |
| County: Middlesex | State: MA          Zip: 02474-1121 |
| Legal Description: Book 27278     Page 176 | |

## FEES

| | AMOUNT |
|---|---|
| Full Appraisal | 375.00 |
| | |
| **SUBTOTAL** | 375.00 |

## PAYMENTS

| | AMOUNT |
|---|---|
| Check #:     Date: 03-21-2005     Description: | |
| Check #:     Date:          Description: | 375.00 |
| Check #:     Date:          Description: | |
| **SUBTOTAL** | 375.00 |



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:
339 Mystic Street
Book 27278      Page 176
Arlington, MA 02474-1121

## FOR:
Peoples Choice Mortgage
420 North Main Street
Randolph, MA 02368

## AS OF:
03/08/05

## BY:
Didarul Salam

☒ Complete Appraisal (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ Limited Appraisal (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

This report is one of the following types:

☐ Self Contained (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ Summary (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.

The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

My engagement in this assignment was not contingent upon developing or reporting predetermined results.

My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

I have (or have not) made a personal inspection of the property that is the subject of this report.

No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

## Comments on Appraisal and Report Identification

Note any departures from Standards Rules 1-3 and 1-4, plus any USPAP-related issues requiring disclosure:

**APPRAISER:**

Signature: _____

Name: Didarul Salam

Date Signed: _____

State Certification #: Certified Residential # 70758

or State License #: _____

State: MA

**SUPERVISORY APPRAISER (only if required):**

Signature: _____

Name: _____

Date Signed: _____

State Certification #: _____

or State License #: _____

State: _____

| Sale Price $ | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Refinance | | | | | | | amount to be paid... | |
| Lender/Client | Peoples Choice Mortgage | | Address 420 North Main Street, Randolph, MA 02368 | | | | | |
| Appraiser | Didarul Salam | | Address 340 Park Street, Boston, MA 02124 | | | | | |

| Location | Urban | ☐ Suburban | Rural | Predominant occupancy | Single family housing | | Present land use % | | Land use change |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE $(000) | AGE (yrs) | | | |
| Built up | Over 75% | 25-75% | Under 25% | | | | One family | 80 | Not likely Likely |
| Growth rate | Rapid | Stable | Slow | Owner | 400 Low | 5 | 2-4 family | 15 | In process |
| Property values | Increasing | Stable | Declining | Tenant | | | Multi-family | | To: |
| Demand/supply | Shortage | In balance | Over supply | Vacant (0-5%) | 1,500 High | 80 | Commercial | 5 | |
| Marketing time | Under 3 mos. | 3-6 mos. | Over 6 mos. | Vac (over 5%) | Predominant | | | | |
| | | | | | 600 | 50 | | | |

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

Neighborhood boundaries and characteristics:  The subject neighborhood is bounded by Old Mystic Street on the North, Rte 60 on the South, Lower Mystic Lake on the East and Washington Street on the West.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject is located in an established neighborhood consisting primarily of single family vinyl siding dwellings that appear to be maintained in average to good overall condition. Services access are located nearby. No unfavorable factors affecting marketability were noted or observed. Minor commercial influence is not close enough be considered adverse with respect value or marketability. The subject is a short drive to Rte.60.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): The real estate market in the subject's area appears to be stable. The subject property has the view and the frontage to the Lower Mystic Lake . Marketing time is considered to be three to six months. Concessions do not appear necessary when properties are reasonably priced and properly marketed.

**PUD**

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HCA)?    Yes    No
Approximate total number of units in the subject project _____   Approximate total number of units for sale in the subject project _____
Describe common elements and recreational facilities:

**SITE**

| | | | | | |
|---|---|---|---|---|---|
| Dimensions | 110x379.57x11x367 | | | Topography | level |
| Site area | 40,620 sqft. | | | Size | typical for the area |
| Specific zoning classification and description | R 1 | (6,000 sf. 60 ft ) | Corner Lot  Yes  No | Shape | mostly rectangular |
| Zoning compliance | Legal | Legal nonconforming (Grandfathered use) | Illegal  No zoning | Drainage | appears adequate |
| Highest & best use as improved: | Present use | Other use (explain) | | View | Residential |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping | good |
|---|---|---|---|---|---|---|---|---|
| Electricity | Public | | Street | Asphalt | | | Driveway Surface | paved |
| Gas | Oil | | Curb/gutter | Granite | | | Apparent easements | none noted |
| Water | | | Sidewalk | Concrete | | | FEMA Special Flood Hazard Area  Yes  No | |
| Sanitary sewer | | | Street lights | incalescent | | | FEMA Zone  C | Map Date 7/5/1982 |
| Storm sewer | | | Alley | none | | | FEMA Map No. 2501770002E | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): No overly adverse easements, encroachments or adverse factors affecting marketability were noted.

**DESCRIPTION OF IMPROVEMENTS**

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | concrete | Slab | none | Area Sq. Ft. | 2,218 | Roof | unk. |
| No. of Stories | 2 | Exterior Walls | Vinyl | Crawl Space | none | % Finished | 40% | Ceiling | unk. |
| Type (Det./Att.) | detached | Roof Surface | asphalt | Basement | full | Ceiling | pls.joist | Walls | unk. |
| Design (Style) | Cape | Gutters & Dwnspts. | aluminum | Sump Pump | none | Walls | Dry Wall | Floor | |
| Existing/Proposed | existing | Window Type | aluminum | Dampness | none noted | Floor | carpet/conc | None | |
| Age (Yrs.) | 1941 | Storm/Screens | yes/yes | Settlement | none noted | Outside Entry Door | Door | Unknown typical | |
| Effective Age (Yrs.) | 20 years | Manufactured House | no | Infestation | none | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | X | X | | X | | | 2,218 |
| Level 1 | X | 1 | 1 | 1 | | 1 | | 2 | 2 | | | 2,218 |
| Level 2 | | | | | | | | 3 | 2 | | | 1,870 |

Finished area above grade contains    9 Rooms;    5 Bedrooms;    4 Bath(s);    4,088   Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | ATTIC | AMENITIES | | CAR STORAGE: 2 Attached | |
|---|---|---|---|---|---|---|---|---|---|
| Floors | wood/cpt/tile/avg-gd | Type | FHW | Refrigerator | None | Fireplace(s) # 2 | | None | |
| Walls | plaster/avg-gd | Fuel | Oil | Range/Oven | Stairs | Patio | | Garage | # of cars |
| Trim/Finish | wood/avg-gd | Condition | average | Disposal | Drop Stair | Deck | | Attached | 2 |
| Bath Floor | tile /avg-gd | COOLING | none | Dishwasher | Scuttle | Porch | | Detached | |
| Bath Wainscot | tile/avg-gd | Central | n/a | Fan/Hood | Floor | Fence | iron | Built-In | |
| Doors | wood/avg-gd | Other | none | Microwave | Heated | Pool | | Carport | |
| | | Condition | n/a | Washer/Dryer | Finished | | | Driveway | 4+ car |

Additional features (special energy efficient items, etc.):  The subject property offers  Vinyl Siding, two car garage and 4 plus car paved Driveway. The Subject is heated by Forced Hot Water by Oil. There is a Beautiful view of Lower Mystic Lake, big yard. Inground pool and patio.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling, additions, etc.: The subject

| COST AP | Total Estimated |  |  |  |  | excess..... lack of buildable lots and the desirability |
|---|---|---|---|---|---|---|
|  | Less Physical Functional External Depreciation | 135,610 |  | = $ | 135,610 | of Arlington. |
|  | Depreciated Value of Improvements |  |  | = $ | 305,110 |  |
|  | "As-is" Value of Site Improvements |  |  | = $ | 10,000 |  |
|  | INDICATED VALUE BY COST APPROACH |  |  | = $ | 1,215,110 |  |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 339 Mystic Street Arlington. MA. | 15 Lincoln Street Arlington. MA. | | 81 Pinehurst Road Belmont. MA | | 61 Spring Valley Road Arlington. MA. | |
| Proximity to Subject |  | 1.34 miles | | 2.83 miles | | 1.33 miles | |
| Sales Price | $ Refinance | $ | 1,230,000 | $ | 1,325,000 | $ | 1,425,000 |
| Price/Gross Living Area | $ / | $ 351.43 / | | $ 482.52 / | | $ 369.08 / | |
| Data and/or Verification Source | Inspection Assessors | Banker & Tradesman/MLS Assessors | | Banker & Tradesman/MLS Assessors | | Banker & Tradesman/MLS Assessors | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing Concessions |  | conventional financing | | conventional financing | | conventional financing | |
| Date of Sale/Time |  | 08/11/2004 | | 12/03/2004 | | 10/12/2004 | |
| Location | good | similar | | similar | | similar | |
| Leasehold/Fee Simple | fee simple | fee simple | | fee simple | | fee simple | |
| Site | 40,620 sqft. | 10,448 sf. | +25,000 | 62,268 | −20,000 | 25,761 sf. | +15,000 |
| View | Residential | Residential | | Residential | | Residential | |
| Design and Appeal | Cape | Colonial | | Colonial | | Cape | |
| Quality of Construction | good | good | | similar | | good | |
| Age | 1941 | 1905 | | 1939 | | 1957 | |
| Condition | average/good | average/good | | superior | −150,000 | good | −150,000 |
| Above Grade Room Count | Total Bdrms Baths 9 5 4 | Total Bdrms Baths 11 4 3.5 | +2,500 | Total Bdrms Baths 10 5 3.5 | +2,500 | Total Bdrms Baths 14 6 4 | |
| Gross Living Area | 4,088 Sq. Ft. | 3,500 Sq. Ft. | +5,900 | 2,746 Sq. Ft. | +13,400 | 3,861 Sq. Ft. | +2,300 |
| Basement & Finished Rooms Below Grade | full Partial finished | full finished | −10,000 | full partial finished | | full finished | −10,000 |
| Functional Utility | average | average | | average | | average | |
| Heating/Cooling | fhw/none | fhw/central | −5,000 | fhw/none | | frw/central | −5,000 |
| Energy Efficient Items | none | none | | none | | none | |
| Garage/Carport | 2 car garage | 2 car garage | | 2 car garage | | 2 car garage | |
| Porch, Patio, Deck. | enc.porch | enc.porch/deck | −3,000 | 2 porches,1 deck | −6,000 | Balcony/deck | −3,000 |
| Fireplace(s). etc. | 2 fireplaces | 2 fireplace | | 3 fireplace | −3,000 | 2 fireplaces | |
| Fence, Pool, etc. | fence/ingrond pool | fence/ingrd pool | | none | +5,000 | fence/inground pool | |
| Net Adj. (total) |  | + − $ | 15,400 | + − $ | 158,100 | + − $ | 150,700 |
| Adjusted Sales Price of Comparable |  | $ | 1,245,400 | $ | 1,166,900 | $ | 1,274,300 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):.......The GLA was adjusted at $10 a sq. ft. rounded. Sale # 2 and 3 adjusted for superior condition/Renovation as per mls and exterior view. Full bath adjusted at $5,000. Fireplaces were adjusted at $3,000 each. Central Air were adjus at $5,000 each. Inground pool were adjusted at $5,000 each. Partial finished basement were adjusted at $10,000. Due to lack of comparables similar to the subject in subject area, it was necessary for the appraiser to use different type of style as a comparable.Excess land is considered residual and minimal site adjustment was warranted. All Sales were considered strong indicators of value and all were given equal weight in the final estimate.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for pr of sales within year of appraisal | none past year as per B & T | none past year as per B & T | none past year as per B & T | none past year as per B & T |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: None of the properties above have transferred in the last 12 months. The subject has not been listed within the last 12 months. The subject has not sold within the last years.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................................. $ 1,250,000

INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ n/a Mo. x Gross Rent Multiplier n/a = $

This appraisal is made "as is" subject to the repairs, alterations, inspections or conditions listed below: subject to completion per plans & specifications. Conditions of Appraisal: This report is prepared for mortgage lending purposes only and governed by the limiting condition section of this report. No warranty of subject is given by appraiser.

Final Reconciliation: Most weight has been placed on the comparable sales analysis. The cost approach has not been weighted heavily due to the lack of land sales. The income approach is not considered a reliable indicator due to the lack of rental data.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised   6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE   $ 1,250,000   03/08/05

SALES OVER 6 MONTHS AND 1 MILE

A thorough search for comparable sales was made in this neighborhood and market area. After careful review of the sales in Arlington the appraiser selected 1 sale which closed over 6 months from the date of this report, and 2 sales which were located slightly over 1 mile from the subject. Sales which were closer or more recent differed substantially in size, style and overall appeal. The comparables selected for this appraisal were the closest, most recent and most similar sales on the date of this appraisal.

LAND VALUE

The subject land value was derived through a compilation and correlation of data from the subject community and or market area. This data includes information obtained from comparable closed sales, current listings, comparable sale land extractions and through the allocation method.

PHOTOS

Some of the Comparable photos used in this report were taken from prior files and or MLS but verified with an on site inspection per USPAP.

DEPRECIATION SECTION

1 free standing oil storage tank was located in the unfinished section of the basement and displayed no signs of leakage or deterioration on the day of inspection.

HIGHEST & BEST USE

The highest and best use of the subject property "as vacant" and "as improved" are that of the subjects present use as a single family dwelling.

REPORT FORMAT

This report constitutes a "Complete Summary Appraisal Report".

Comments on Sale #2 and #3 :

Due to lack of recent comparable sales in the town of Arlingon, it was necessary to use sale #2 and #3 from neighboring town Belmont.

## Subject Front



339 Mystic Street

| | |
|---|---|
| Sales Price | Refinance |
| Gross Living Area | 4,088 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4 |
| Location | good |
| View | Residential |
| Site | 40,626 sqft. |
| Quality | good |
| Age | 1941 |

## Subject Rear



## Subject Street





## Comparable 1

15 Lincoln Street

| | |
|---|---|
| Prox. to Subject | 1.34 miles |
| Sale Price | 1,230,000 |
| Gross Living Area | 3,500 |
| Total Rooms | 11 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | similar |
| View | Residential |
| Site | 10,448 sf. |
| Quality | good |
| Age | 1905 |



## Comparable 2

81 Pinehurst Road

| | |
|---|---|
| Prox. to Subject | 2.83 miles |
| Sale Price | 1,325,000 |
| Gross Living Area | 2,746 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3.5 |
| Location | similar |
| View | Residential |
| Site | 62,268 |
| Quality | similar |
| Age | 1939 |



## Comparable 3

61 Spring Valley Road

| | |
|---|---|
| Prox. to Subject | 1.33 miles |
| Sale Price | 1,425,000 |
| Gross Living Area | 3,861 |
| Total Rooms | 14 |
| Total Bedrooms | 6 |
| Total Bathrooms | 4 |
| Location | similar |
| View | Residential |
| Site | 25,761 sf. |
| Quality | good |
| Age | 1957 |

typical; marketing; (3) both parties are well informed or well advised, and each acting in what he considers his own best interest; (4) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

# STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of curing the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report, I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  338 Mystic Street, Arlington, MA 02474-1121

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: _Richard A. Salem_ | Signature: _____ |
| Name: Richard Salem | Name: _____ |
| Date Signed:  April 03, 2005 | Date Signed: _____ |
| State Certification #: _Certified Residential # 70258_ | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State:  MA | State: _____ |
| Expiration Date of Certification or License: 5/2/2006 | Expiration Date of Certification or License: _____ |
|  | ☐ Did   ☐ Did Not Inspect Property |

Freddie Mac Form 439 6-93

Page 2 of 2

Fannie Mae Form 1004B 6-93



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 2218.0 | 2218.0 |
| GLA2 | Second Floor | 1870.0 | 1870.0 |

| LIVING AREA BREAKDOWN | | | |
|---|---|---|---|
| Breakdown | | | Subtotals |
| First Floor | | | |
| 1.0 | x | 26.0 | 26.0 |
| 8.0 | x | 14.0 | 112.0 |
| 14.0 | x | 28.0 | 392.0 |
| 2.0 | x | 4.0 | 8.0 |
| 21.0 | x | 40.0 | 840.0 |
| 21.0 | x | 40.0 | 840.0 |
| Second Floor | | | |
| 8.0 | x | 10.0 | 80.0 |
| 10.0 | x | 20.0 | 200.0 |
| 28.0 | x | 46.0 | 1288.0 |
| 1.0 | x | 26.0 | 26.0 |
| 12.0 | x | 23.0 | 276.0 |





**Washington Mutual**
HOME LOANS

# Home Loan Statement
## March 2005

Washington Mutual Bank, FA
Customer Service: Toll free 1.866.926.8937  Se habla espanol
TDD: Dial 7-1-1 for relay assistance
www.WaMuHomeLoans.com

#6WNCLNN
#290658639364494#
2005147 01 AT 0.392 **AUTO  T0 0.9032 02474-1121        MA1

HANA F ALJADER
339 MYSTIC ST
ARLINGTON MA 02474-1121

Statement Date:           March 01, 2005
Activity Since:           February 01, 2005
Your Loan Number:         0658639364

### Your Property and Loan Information

| | | |
|---|---|---|
| Property Address: | | 339 MYSTIC ST |
| | | ARLINGTON MA 02474 |
| Principal Balance: | $ | 564,102.63 |
| Interest Rate: | | 5.12500% |
| Escrow Balance: | $ | 5,078.39 |
| Unpaid Interest, Loan to Date: | $ | 0.00 |

### Your Next Payment

| | | |
|---|---|---|
| Next Payment Due: | | April 01, 2005 |
| Principal and Interest: | $ | 3,136.24 |
| Escrow: | $ | 1,245.61 |
| Current Payment: | $ | 4,381.85 |
| **Total Amount Due:*** | $ | 4,381.85 |

### Other Important Messages

This billing statement is for your records only. Your payment is made directly through our autodraft system and will draft on 04/01/05.

**Additional Payment Options:**
Each of the following payment options will include an Escrow Payment and/or Late Charges, when applicable.

| | | |
|---|---|---|
| 1. Minimum Payment: | $ | 4,381.85 |
| 2. Interest Only Payment: | | Not Applicable |
| 3. Full Principal and Interest Payment: | $ | 4,381.86 |
| (based on the remaining scheduled term of your loan) | | |
| 4. Full Principal and Remaining Payment: | $ | 6,056.70 |
| (based on a 15-year term) | | |

### Adjustable Rate Mortgage Information

| | |
|---|---|
| Index Value: | 1.37900 |
| Margin: | 2.60000 |
| For Payment Due: | April 01, 2005 |
| Interest Rate: | 5.1250% |

### Year to Date Account Activity

| | | |
|---|---|---|
| Principal Paid: | $ | 2,162.66 |
| Interest Paid: | $ | 7,246.06 |
| Property Taxes Paid: | $ | 3,329.29 |
| Insurance Paid: | $ | 0.00 |

### Important Messages

* To avoid a late charge of $94.09, we must receive your payment of principal, interest, and any escrow deposits and/or past-due payments by 04/16/05 during our business hours. If this date falls on a weekend or holiday, your payment must be received by the next business day.

For additional information about your payment options and for Recent Account Activity, please see the reverse side of this statement.

Please return bottom portion with your payment (allow 7-10 days for postal delivery).

 

**Washington Mutual**     156-B
HOME LOANS

HANA F ALJADER

| | |
|---|---|
| **Loan Number:** | **0658639364** |
| Statement Date: | March 01, 2005 |

Please write your loan number on your check.
Make check payable to Washington Mutual.

Please check here if change of address or telephone number is indicated on the reverse side of this form.

WASHINGTON MUTUAL
PO BOX 830105
BALTIMORE MD 21283-0105

| | | |
|---|---|---|
| Payment Due Date: | | April 01, 2005 |
| Current Payment: | $ | 4,381.85 |
| Total Amount Due: | $ | 4,381.85 |
| If Received After: | | April 16, 2005 |
| Total Amount Plus Late Charges: | $ | 4,475.94 |

**Making Your Payment**
Please write in your payment amount --- either the Total Amount Due or one of the Additional Payment Options selected from the "Your Next Payment" section above. Indicate how to apply any additional funds. If you include additional funds and do not indicate how to apply them, we will apply them first to applicable advances, then to any fees due and then to principal.

| | | |
|---|---|---|
| Payment Amount | | |
| Late Charges | + | _____ |
| Additional Principal | + | _____ |
| Additional Escrow | + | _____ |
| Future Payments | + | _____ |
| **Total Amount Enclosed** | = | AUTODRAFT |

0605670  0438186  0000000  0658639364  0438185  0009409  0438185  4

LAW OFFICES

JAMES MICHAEL MERBERG

66 LONG WHARF
BOSTON, MASSACHUSETTS 02110
TELEPHONE (617) 723-1990
FACSIMILE (617) 720 5760

April 3, 2005

Providence Mutual Fire Insurance Company
P.O. Box 6066
Providence, RI    02940

Re:    Policy No. HP009945800
       Location:  62 Cambridge Street, Winchester, Massachusetts

Dear Sir or Madam:

        Please be advised that the above-referenced property which is insured pursuant to
the terms of the above policy has been pledged as security for the release of Hana F. Al
Jader in a criminal case pending in the United States District Court for the District of
Massachusetts (Docket No. 05 CR 10085 RCL).  One of the required conditions for using
the subject property as collateral is that in addition to the named insured, the Clerk of the
United States District Court must also be named as a loss payee jointly with the surety
(owner).

        Therefore, I would respectfully request that you add as an additional loss payee on
the above-referenced policy the Clerk of the United States District Court for the District
of Massachusetts whose address is 1 Courthouse Way, Boston, MA 02210.

        Thank you for your assistance in this matter.

                                        Very truly yours,

                                        James Michael Merberg

JMM:dg
Enclosures

        I, Ammar Chamo, owner of the above-referenced property and named insured on
the above-referenced policy, respectfully request that the Clerk for the United States
District Court for the District of Massachusetts be named as an additional loss payee.

                                        Ammar Chamo

LAW OFFICES

## JAMES MICHAEL MERBERG

66 LONG WHARF
BOSTON, MASSACHUSETTS 02110
TELEPHONE (617) 723-1990
FACSIMILE (617) 720-5760

April 3, 2005

Massachusetts Property Insurance
  Underwriting Association
c/o Segal Insurance Agency, Inc.
1050 Hancock Street
Quincy, MA  02169

Re:    Policy No. 0825064-1
         Location:  339 Mystic Street, Arlington, Massachusetts 02474

Dear Sir or Madam:

Please be advised that the above-referenced property which is insured pursuant to the terms of the above policy has been pledged as security for the release of Hana F. Al Jader in a criminal case pending in the United States District Court for the District of Massachusetts (Docket No. 05 CR 10085 RCL).  One of the required conditions for using the subject property as collateral is that in addition to the named insured, the Clerk of the United States District Court must also be named as a loss payee jointly with the surety (owner).

Therefore, I would respectfully request that you add as an additional loss payee on the above-referenced policy the Clerk of the United States District Court for the District of Massachusetts whose address is 1 Courthouse Way, Boston, MA 02210.

Thank you for your assistance in this matter.

Very truly yours,

James Michael Merberg

JMM:dg
Enclosures

I, Hana F. Al Jader, owner of the above-referenced property and named insured on the above-referenced policy, respectfully request that the Clerk for the United States District Court for the District of Massachusetts be named as an additional loss payee.

Hana F. Al Jader