**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-10085-RCL |
| HANA F. AL JADER | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR A BILL OF PARTICULARS**

The United States by its undersigned attorneys hereby opposes the defendant's Motion for a Bill of Particulars and submits that it should be denied in its entirety.

The defendant's requests for a bill of particulars seeks discovery of the nature, theory, and details of the government's case. The requests are unsupported and are overly broad in scope, in effect, seeking wholesale discovery of the government's case against the defendant.

**THE CHARGES**

The defendant, Hana F. Al Jader, a Saudi citizen residing in Winchester, MA, is indicted on multiple charges of forced labor, document servitude, visa fraud and harboring of aliens relating to her employment of two Indonesian women ("Tri" and "Ro") as domestice servants. More speciifically, Count One and Two charge that the defendant violated the forced labor statutes, 18 U.S.C. §§1589 and 1594, from in or around February ,2003 through November 16, 2004, "by knowingly obtaining, and attempting to obtain, the labor and services of Tri [Ro in Count Two] by threats of serious

harm and physical restraint against Tri; by a scheme, plan, and pattern intended to cause Tri to believe that, if she did not perform such labor or services, that she would suffer serious harm or physical restraint; and by the abuse and threatened abuse of law and the legal process."

Counts Three and Four allege that the defendant, during the same time period, "did knowingly conceal, remove, confiscate, and possess the actual Indonesian passport and United States visa belonging to Tri [Ro in Count Four] in the course of a violation of, and with the intent to violate Title 18, United States Code, Section 1589, and to prevent and restrict, without lawful authority, Tri's liberty to move and travel, in order to maintain the labor and services of Tri," in violation of 18 U.S.C. §1592.

Counts Five through Eight allege the defendant presented fraudulent documents to the Department of Homeland Security in support of visa extensions for Tri and Ro, falsely stating that Tri and Ro "works. . . as a housekeeper, for eight hours daily and will get one thousand five hundred dollars a month," which the defendant knew were false in that [each] was paid only $300 per month and worked more than eight hours daily."

Counts Nine and Ten charge the defendant with knowingly and unlawfully harboring Tri and Ro from January 12, 2004 through November 16, 2004, with reckless disregard to the fact that they were then no longer in the country legally.

2

## DEFENDANT'S MOTION

The defendant's motion seeks, with respect to Counts One and Two, among other things, the "specific acts and words," including their time and place, which constitute the threats of serious harm; the specific acts of physical restraint; the scheme, plan and pattern alleged; and the threatened abuse of legal process alleged to have been used to obtain and maintaining the labor and services of Tri and Ro. Regarding Counts Three and four, the defendant seeks the "time, place, and manner" by which she is alleged to have concealed, removed, confiscated and possessed the Indonesian passports belonging to Tri and Ro.

## ARGUMENT

The defendant's motion should be denied because it seeks discovery of the nature, theory, and details of the government's case. As the Court of Appeals for this Circuit has noted, "[t]he purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989). See United States v. Arboleda, 929 F.2d 858, 869 (1st Cir. 1991); United States v. Hallock, 941 F.2d 36, 40 (1st Cir. 1991); United States v. Leach, 427 F.2d 1107, 1110 (1st Cir.), cert. denied, 400 U.S. 829 (1970). See also, Wong Tai v. United States, 273 U.S. 77 (1927). "A bill of particulars is required only where the indictment is too vague and indefinite to accomplish these

objectives." United States v. Feliziani, 472 F.Supp. 1037, 1045 (E.D. Pa. 1979). A bill of particulars is "not to be used as a general investigative tool for the defense, as a device to compel disclosure of the Government's evidence or its legal theory prior to trial, or to foreclose the Government from using proof it may develop as the trial approaches." United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted); see also United States v. Williams, 181 F. Supp.2d 267, 294 (S.D.N.Y. 2001).

The defendant seeks precisely this type of improper disclosure. Here, the indictment informs her of the time period in which the offenses occurred, the place, the alleged victims, and a description of the illegal conduct that conforms with the statutory terms. Given the informative nature of the relatively straight-forward indictment, the defendant is fully apprized of the charges against her to avoid any unfair surprise and defend against the specific charges.

Rather than seek information which is necessary to give adequate notice of the charges, the defendant's motion for bill of particulars is designed to obtain the government's proof. In effect, it seeks to compel the government to try its entire case on paper during this discovery phase, and in the process, to restrict the government's trial evidence as to the matters so delineated. See United States v. Kelley, 254 F. Supp. 1116 (S.D.N.Y 1966) ("The matter sought is purely evidentiary and the request is therefore denied."). For example, the defendant seeks details, including the

4

date and place, of any acts and words constituting threats of serious harm, and the specifics of the scheme, pattern and plan intended to cause the victims to believe that if they did not work, they would suffer serious harm. However, "[a] bill of particulars should not be used to conduct discovery of the government's theory of a case, to force detailed disclosure of the facts underlying a charge, or to restrict the government's proof at trial." United States v. Mannino, 480 F.Supp. 1182, 1185 (S.D. N.Y. 1979). See United States v. Boffa, 513 F.Supp. 444, 485 (D. Del. 1980); United States v. Johnson, 504 F.2d 622, 628 (7th Cir. 1974) (bill of particulars does not entitle defendants to purely evidentiary matters); United States v. Sandler, 462 F.2d 122 (6th Cir. 1972) (names of witnesses not discoverable via bill of particulars); United States v. Wolfson, 413 F.2d 804, 808 (2nd Cir. 1969) (identity of persons present at time of offense not subject of bill of particulars).

To escape the weight of judicial authority that rejects the kind of particulars the defendant seeks, the defendant cites the fact that the forced labor statute, 18 U.S.C. §1589, was enacted by Congress in 2000 to broaden the scope by which involuntary servitude could be prosecuted and proven. Previously, under the holding of United States v. Kozminski, 487 U.S. 931 (1988), to prove that a person was held to a term of involuntary servitude, there had to be proof the defendant used force or threat of force or legal coercion. The government agrees that §1589 is a broader

provision than the involuntary servitude statute, 18 U.S.C. §1584. As the First Circuit remarked in  United States v. Bradley, 390 F.3d 145 (1st Cir. 2004):

> In glossing the new statute, the conference report said "serious harm" was intended to encompass not only physical violence, but also more subtle psychological methods of coercion -- such as where traffickers threaten harm to third persons, restrain the victims without physical violence or injury, or threaten dire consequences by means other than overt violence."

Id. at 350.

This correct interpretation of §1589's intent and scope, however, does not afford the defendant the discovery of evidence and legal theories she seeks.  Rather than avoid unfair surprise, the defendant is attempting to restrict the government's proof and legal theories.  Yet, the defendant need not remain uninformed to the types of unlawful conduct the statute foresees.  Indeed, examples are provided in the legislative hsiory:

> Section 1589(1) reaches instances where the traffickers "restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence."  Section 1589(2) prohibits schemes that might include the use of psychological threats, ostracism, isolation, banishment, starvation, or threats against family members or property.  Section 1589(3) is intended to prohibit actions such as threatening to report a victim to the immigration service.

146 Cong. Rec. at H8881.

Contrary to defendant's argument, the existence of these examples in the legislative history do not require the government to pre-try its case to the defendant.  As the court observed in the case cited by defendant, United States v. Garcia, 2003 WL 22956917

6

*3 (W.D.N.Y. 2003), "[t]he words used in §1589 are common words."
Together with the examples recited in the legislative history, the
defendant can adequately prepare a defense without knowing through
a bill of particulars the details of the testimony of witnesses
called by the government, as well as the government's legal
arguments how the requisite elements will be proven.  In the end,
it will be a jury question whether the evidence has shown "threats
of serious harm" or a "scheme, pattern or plan intended to cause
the victims to believe they would suffer serious harm" if they did
not provide labor.  In that regard, the First Circuit approved of
the following instruction:

> The term "serious harm" includes both physical and non-
> physical types of harm.  Therefore, a threat of serious
> harm includes threats of any consequences, whether
> physical or non-physical, that are sufficient under all
> the circumstances to compel or coerce a reasonable person
> in the same situation to provide or continue providing
> labor or services.

Bradley, 390 F.3d at 150.  Under this kind of instruction, it would
be inappropriate to require the government to advance its evidence
and arguments at this stage of the litigation.

Thus, the government need not disclose "the precise manner in
which the crime charged in the indictment is alleged to have been
committed" United States v. Andrews, 381 F.2d 377, 377-8 (2d Cir.
1967); United States v. Chenaur, 552 F.2d 294, 301 (9th Cir. 1977);
United States v. Abrams, 513 F. Supp. 1184, 1194 (S.D.N.Y. 1982);
or "the manner in which it will attempt to prove the charges"
United States v. McCarthy, 292 F. Supp. 937, 940 (S.D.N.Y. 1968);

7

United States v. Leonelli, supra, at 882.

In the end, the test whether a defendant is entitled to a bill of particulars is thus not whether the information sought would be useful, United States v. Bonanno, 177 F.Supp. 106, 120 (S.D. N.Y. 1959), rev'd on other grounds, 285 F.2d 408 (2nd Cir. 1960); or desirable, United States v. Lupino, 171 F.Supp. 648, 650 (D.C. Minn. 1958); or would make preparation of a defense less difficult. Tillman v. United States, 406 F.2d 930, 939 (5th Cir. 1969). Rather, the test is whether the bill is necessary, United States v. Bonanno, supra, 177 F.Supp. at 120.  This test has not been met by the defendant.

Moreover, the information set forth in the indictment has been supplemented by the government's providing full discovery under Federal Rules of Criminal Procedure Rule 16 and L.R. 116.1. Such discovery has included some grand jury transcripts of witnesses employed by the defendant that recounted that the defendant did not permit Tri and Ro to leave the house unescorted. Such information, in addition to the indictment, gives the defendant further opportunity to prepare adequately for trial.

As for the defendant's request to learn the specific manner in which she concealed, removed, confiscated and possessed the victims' passports charged in Count Three and Four, the indictment already specifies the approximate dates of the offense.  Discovery already provided indicates that the passports were found in a safe in the defendant's room in the Winchester house.  The defendant is entitled to no more evidentiary detail to avoid unfair surprise or

8

be sufficiently aware of the nature of the charges against her.

<u>**CONCLUSION**</u>

The information sought by the defendant in her Motion for a Bill of Particulars is evidentiary in nature. Particularization beyond that already provided in the indictment and discovery would unduly restrict the government's proof at trial. Where no extraordinary need has been demonstrated by the defendant, she should not be permitted to employ a bill of particulars as a means to discover before a trial all the details of the government's evidence and legal theories.

For these reasons, her Motion for a Bill of Particulars should be denied in its entirety.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


dated: September 2, 2005          By: /s/ S. Theodore Merritt
                                  S. THEODORE MERRITT
                                  Assistant U.S. Attorney

                                  LOU DeBACA
                                  Special Litigation Counsel
                                  Criminal Section
                                  Civil Rights Division
                                  U.S. Department of Justice