UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>          v.<br><br>HANA F. JADER | Criminal Action<br>#05-10085-RCL |

**UNITED STATES' MOTION IN LIMINE IN SUPPORT
OF ADMISSION OF TESTIMONY RELATED TO PRIOR SERVANTS**

Now comes the government, by and through its attorneys of record, and hereby submits this motion in limine requesting that the court admit evidence of the defendant's mistreatment of prior servants. The government, in accordance with the court's order, provided defense counsel notice of its intent to introduce such evidence under Rule 404(b) on August 15, 2006. The government hereby submits this brief to assist the court in ruling upon the admissibility of this evidence. The evidence is admissible not only as intrinsic evidence of the crimes of forced labor and document servitude, but also under Rule 404(b). Because the government seeks to mention this evidence in opening, it respectfully requests a ruling prior to trial.

### I.  Evidence at Issue

The government intends to introduce evidence that, in the years leading up to the charged conduct, the defendant employed other domestic servants in her home and subjected them to similar restrictive working conditions, meager wages, document confiscation, and threats of arrest should they leave her service. Despite the defendant's conduct, some of these servants did run away. The named victims, Tri and Ro, subsequently heard about the mistreatment of the

other servants while they worked for the defendant. In addition, the government anticipates introducing evidence that the defendant was warned by a member of her household staff and by a civil attorney, who helped rescue one of the prior servants, that her mistreatment of the servants was impermissible in the United States. Although put on notice of the wrongfulness of her conduct, the defendant ignored the warnings and responded, in part, by locking in a safe the passports of the servants, including Tri and Rohimah's.

a. **Veronica Pedroza**

Veronica Pedroza is a Filipino women who was recruited to work in Saudi Arabia as a servant and ended up working for the defendant's sister. The defendant then brought Pedroza to the United States in early 2000 to act as a care giver for the defendant's disabled husband. Al Jader confiscated her passport and those of two Indonesian domestic workers, who were also employed. Al Jader told Pedroza and the Indonesian women that they were not allowed to go outside of the house alone, and if they left the house, the police would arrest them and put them in jail because they had no passports. Al Jader also told Pedroza that if she quit, she would be required to pay back the money it cost to bring her to the United States. Pedroza was paid only $200 over the course of five months. At one point, Al Jader's son threatened to beat her, and when Pedroza complained to Al Jader, she told Pedroza that her son would be the next prince and that she was paid to work, not to answer back. Al Jader pointed her finger at Pedroza's head as if to slap her. Pedroza fled from the house in a house coat and slippers about five months after her arrival, eventually complaining to an anti-slavery group that precipitated this investigation.

**b.     Mukarram Louck**

Ms. Louck managed the household for Al Jader when Pedroza and several Indonesian women were in service at the defendant's Arlington home. Louck warned Al Jader that mistreated servants who were not paid well and not allowed to come and go would try to run away. Al Jader told her that she kept their passports so they could not run away, although Louck told her this would make no difference. Louck further told Al Jader that she could not treat the maids this way in the United States. Al Jader's response was that she "would just leave" if she had to.

In April, 2000, while Louck was supervising two Indonesian maids, "Tina" and "Yanthi," while Al Jader was away, the defendant's son, Prince Salman (who was 16 or 17 years old at the time), hit the Indonesian servant Tina for failing to immediately carry out his demands. As a result, Tina and Yanthi ran away. Louck called the Arlington police, who found the women and brought them back to the house. When Louck reported these events to Al Jader, who was in Saudi Arabia, Al Jader said that it was the maid's fault for not responding to a prince's orders quickly enough. Two days later, and before Al Jader returned, the two women ran away for good.

**c.     Jessie Obispo**

Obispo worked for the defendant as an aide to the Prince in 1993 or 1994, during a period of time when the Prince was receiving treatment at Spaulding Rehabilitation Hospital. Evidence will show that Obispo was required to stay in the Prince's room at all times, leaving only to do the laundry. She slept on a couch or on the floor, was very thin, and was fed by hospital employees. Obispo was largely unpaid for her work and escaped with the help of Grace Brown,

who was a nurse at the hospital, and her husband, Neal Brown, who was an attorney. After helping Obispo escape, Neal Brown arranged a meeting with Al Jader and told her Jader that she was no longer in Saudi Arabia and under American laws she had to pay her servants. Al Jader paid Brown a sum of money for back wages for Obispo. In January 1995, the defendant wrote a letter explaining that Obispo had worked for her from October 1, 1990 until December 31, 1994; that she worked 14 hours a day, Monday through Sunday; and that she received only $ 200 a month as a salary.

## II.  Legal Standard

Federal Rule of Evidence 404(b) bars admission of evidence of "other crimes, wrongs, or acts" if used to prove the "character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rule 404(b), by its express terms, bars only evidence extrinsic to the crime charged. United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996). When evidence is introduced as part of a "necessary description of the events leading up to the crimes and as intrinsic evidence of an element of the charged offense" it does not fall under the purview of 404(b). United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 50 (1st Cir. 204) (upholding district court's decision to admit evidence of prior acts of domestic violence in parental kidnapping case). Evidence that is "intertwined" with the criminal conduct at issue is similarly admissible as non-404(b) evidence. See United Stats v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) (tax return which failed to indicate money obtained from illegal acts was part and parcel of case), cert. denied, 126 S.Ct. 1596 ( Mar 20, 2006); see also United States v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005) ("Evidence of acts other than conduct related to the offense is intrinsic when the evidence of the other act and the evidence of the crime charged are 'inextricably

intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged.") (internal quotations and citations omitted). Admissibility of intrinsic evidence is governed only by rules regarding relevance and prejudice. Fazal-Ur-Raheman-Fazal, 355 F.3d at 50 (holding district court acted within its discretion in declining to treat the testimony as 404(b) evidence and in determining its admissibility under Rules 401 and 403).

Admission of *extrinsic* evidence of other crimes, acts or wrongdoings is, of course, evaluated under Rule 404(b). The First Circuit has repeatedly held, however, that the prohibition on the introduction of other act evidence outlined in Rule 404(b) applies when the evidence offered by the government is relevant *only* to the issue of a defendant's character; where the evidence is offered for other purposes, Rule 404(b) permits its admission. See, e.g. United States v. Escobar-De Jesus, 187 F.3d 148, 169 (1st Cir. 1999); United States v. Fosher, 568 F.2d 207, 212 (1st Cir. 1978) ("Rule 404(b) is not exclusionary. Rather, it permits the introduction of prior-crimes evidence unless the *sole purpose* for the offer is to establish the defendant's propensity for crime.") (emphasis added).

Indeed, this governing principle of Rule 404(b) has been consistently applied in this Circuit to admit 404(b) evidence in involuntary servitude and forced labor cases. See United States v. Alzanki, 54 F.3d 994, 1007 (1st Cir. 1995) ("The Rule 404(b) bar is not implicated unless the challenged 'other crimes, wrongs, or acts are relevant *exclusively* to instigate an inference that the defendant is more likely to have acted in a similar fashion committing the offense for which he is on trial.'") (citations omitted) (emphasis in original). In Alzanki, the court affirmed the trial court's admission of evidence that the defendant physically abused his

5

wife in the presence of the the victim because "it bore special relevance to the pivotal element of the alleged offense quite apart from the propensity to commit wrongful acts, viz. the 'reasonableness' of the [servant's] stated fear that she would be a target of the defendant's physical violence should he disobey her." Id.

In the recently decided Bradley case, the First Circuit approved admission of very similar 404(b) evidence of the treatment of prior employees in a forced labor case. See United States v. Bradley, 390 F.3d 145, 154 (1st Cir. 2004), sentence rev'd, 125 S.Ct. 2543 (2005) (sentence reversed for reconsideration in light of United States v. Booker, 543 U.S. 220 (2005)). In Bradley, the defendants owned a tree service in New Hampshire and recruited seasonal workers in Jamaica to work for the tree service. Two men, Wilson and Clarke, were recruited with promises of good pay and lodging. Their actual working conditions were inadequate, they were vastly underpaid, and subject to intimidation. Bradley, 390 F.3d at 149. Clarke fled, resulting in the defendants' seizing Wilson's passport and threatening to harm Clarke in Wilson's presence.

When new workers, including the named victims, Flynn and Hutchinson, were recruited the next year, the defendants seized their passports, explaining that previous workers had run away. These two men were then subjected to ill-treatment, poor wages, and restrictive conditions similar to those experienced by the first set of workers. Id. at 149 ("As with their predecessors [the victims] were badly housed and ill-treated.").

On appeal, the defendants challenged the admission of evidence relating to the defendants' recruitment and treatment of the first workers, Clarke's flight, and the subsequent seizure of Wilson's passport. Id. at 154. The First Circuit first affirmed the trial court's admission of the evidence. Id. The court upheld admission of "the most damaging evidence,"

indicating that Clarke fled, pursued by threats, and that Wilson's passport was then seized, because it provided a "malign motive for, and provide the context of, the later seizure of Flynn and Hutchinson's passports. . ." Id.

The Court also upheld admission of other evidence regarding the defendants abuse of Wilson and Clarke, holding:

> Because none of the laborers was held in formal captivity, the government in this case faced inevitable doubts as to whether the defendants were merely abusive employers or deliberately sought to compel forced labor. Arguably the defendants' prior treatment of Wilson and Clarke, so far as it showed efforts to intimidate them and minimize their outside contact, tended to reinforce the inference that the later, similar treatment of Flynn and Hutchinson was part of a deliberate scheme to hold laborers by intimidation.

Id. at 155.

### III. Analysis

The evidence outlined above is admissible both as intrinsic evidence of the charged conduct and as evidence of motive and intent under Rule 404(b). As explained in more detail in the government's trial brief, to prove a violation of the forced labor counts, the government will have to prove that the defendant (1) knowingly; (2) obtained the labor of Tri or Ro; (3) through threats of serious harm or physical restraint, abuse of the law or legal process, or a scheme, plan, or pattern intended to cause each victim to believe that, if she did not work for the defendant, she would suffer serious harm or physical restraint. See 18 U.S.C. § 1589. To prove a document servitude offense, the government must prove that the defendant confiscated or possessed Tri and Ro's documents to commit, or with intent to commit, a forced labor offense or to restrict Tri and Ro's movements in order to obtain their labor, provided they are victims of a severe form of trafficking. See 18 U.S.C. § 1592.

Evidence that Louck and Neal Brown informed the defendant that she could not abuse her servants in the United States is direct evidence that the defendant acted "knowingly." Although the government need not prove that the defendant actually knew that her conduct violated the law, it must prove that she acted in the absence of mistake or accident. Bryan v. United States, 524 U.S. 184, 191-93 (1998) (defining "knowingly" to require only knowledge of the underlying facts that constitute the offense); United States v. Tracy, 36 F.3d 187, 195 (1st Cir. 1994). Because the evidence directly relates to an element of the charged offense, it is intrinsic evidence. See, e.g., United States v. Luna, 94 F.3d 1156, 1162 (8th Cir. 1996) (evidence intrinsic when it "tends logically to prove any element of the crime charged").

Similarly, evidence of the victims' state of mind is directly relevant to prove elements of the offense. Such evidence is necessary to prove that the defendant's actions caused the victims to provide their labor or services. Cf. Alzanki, 54 F.3d 994, 1007. The named victims had heard about the defendant's treatment of prior servants. Evidence of that treatment thus sheds light on the state of mind of the victims, particularly on whether they felt compelled to provide labor or services.

The evidence is also admissible extrinsic evidence under Rule 404(b). As in Bradley, the government must prove that the defendant was more than an abusive employer; instead, it must show that she used one of the means set forth in § 1589 to compel Tri and Ro's labor. The manner in which she compelled labor from Tina, Yanthi, Pedroza, and Obispo was similar to the manner in which she compelled labor from Tri and Ro. They were subjected to the same conditions and received the same meager pay from her. This, in and of itself, is sufficient to prove her motive, intent, and absence of mistake or accident.

Furthermore, to prove the 1592 offense, the government will have to prove that the defendant took and kept their passports with the intent to impermissibly obtain their labor or services. As in Bradley, evidence that the defendant took the passports from prior servants, will shed light on her motive in taking Tri and Ro's passports. For example, the defendant's specific admission that she held Tina and Yanthi's passport to keep them from running away is clearly indicative of her motive in holding onto the passports of later servants.

Regardless of whether the evidence is admissible as intrinsic evidence under Rule 401 or as extrinsic evidence under Rule 404(b), the court must also consider its admissibility under Rule 403. See United States v. Landrau-Lopez, 444 F.3d 19, 24 (1st Cir. 2006), pet'n for cert. filed (Jun 21, 2006). The First Circuit has stressed that, while there is always some danger that the jury will use evidence relating to other bad acts "to infer criminal propensity," such evidence should be excluded "only when its probative value is *substantially* outweighed by its potential unfairly to prejudice the defendant." Id. (emphasis in original). Here, as in Bradley, the defendant's motive will be a hotly contested issue. Prejudice, on the other hand, will be minimal as the defendants actions towards the prior servants are similar to those she took against the named victims. The evidence should thus be admitted.

### IV.  Conclusion

For all these reasons, the government respectfully requests that this court issue a ruling admitting testimony of the proposed witnesses.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

By: */s/ S. Theodore Merritt*
          S. THEODORE MERRITT
          Assistant U.S. Attorney

          BARBARA KAY BOSSERMAN
          Trial Attorney
          Criminal Section
          Civil Rights Division
          U.S. Department of Justice

### CERTIFICATE OF SERVICE

I, S. Theodore Merritt, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

          */s/ S. Theodore Merritt*
          S. THEODORE MERRITT
          Assistant U.S. Attorney