UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )       Criminal No. 05-10085-RCL
                            )
HANA F. AL JADER            )

**OPPOSITION TO MOTION TO QUASH
TRIAL SUBPOENA**

Defendant Hana Al Jader herby opposes the government's motion to quash trial subpoenas served on the complaining witnesses, Trimurnyati Dzalipa and Rohimah Bakri ("Sophia and Rohimah"). The court should deny the motion to quash because there has been no showing that compliance with the subpoenas by Sophia and Rohimah would be unreasonable or oppressive. It is black letter law that "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *United States v. Nixon*, 418 U.S. 683, 698 (1974). Other than typing the word "oppressive" into its pleading, *see* Motion To Quash at 1, the government makes absolutely no showing that compliance with the subpoenas by Sophia and Rohimah would be oppressive. For that reason alone, the court should deny the motion to quash.

More importantly, the court should deny the motion because the documents sought by the subpoena are necessary for the meaningful exercise of Ms. Aljader's fundamental constitutional rights of confrontation, to present a defense and to due process. The documents sought are calculated to meet specific allegations Sophia and Rohimah will make at trial.

Finally, the court should deny the motion because the government does not have standing to file a motion to quash a trial subpoena directed to a third-party witness.

**Relevant Background**

On November 16, 2004, government agents swept Sophia and Rohimah from the home of Ms. Al Jader. Since that date, the government, with the approval of the court, has kept their precise locations a secret.

Shortly after filing appearances, Ms. Al Jader's current counsel prepared trial subpoenas for each of the witnesses. In the normal course, counsel would have served Sophia and Rohimah directly. However, because the government has not disclosed their locations, counsel requested that the government accept service of the subpoenas. The government, through Assistant United States Attorney S. Theodore Merritt, agreed to accept service of the subpoenas. That agreement was memorialized in a June 19, 2002 cover letter that accompanied the subpoenas, which were served on that date.

The return date on each subpoena is the first day of trial, September 5, 2006.

**Argument**

**1.    The Court Should Summarily Deny the Motion To Quash**

It has been black-letter law for over three decades that: "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Nixon*, 418 U.S. at 698. Neither of the recipients of the subpoenas – Sophia and Rohimah– have made any showing that compliance with the subpoenas would be unreasonable or oppressive. Nor does the pleading the government has purported to file on behalf of the complaining witnesses. That should be the end of the story – motion denied.

Instead of demonstrating unreasonableness or oppressiveness, the government seeks to require the defense to satisfy the four-part test articulated by the Supreme Court

in *Nixon* before any trial subpoena seeking documents can issue. *See* Motion To Quash at 1 (the government "opposes the issuance of these broad and unjustified subpoenas …"); and 2 ("the Supreme Court [in *Nixon*] stated that a party seeking subpoenas <u>duces tecum</u> for documents under Rule 17(c) must make initial showings").

That is decidedly not what the Supreme Court said. The four-part test set out in *Nixon* must be satisfied only when a defendant seeks production of documents in advance of trial, which the subpoenas at issue here do not. A defendant need make no initial showing whatsoever in order to serve a trial subpoena returnable on the trial date – the burden is on the recipient to show oppressiveness or unreasonableness, or else comply:

> A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise. … **[I]n order to require production prior to trial**, the moving party must show: (1) that the documents are evidentiary and relevent; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 4 U.S. at 698-700 (citations omitted, footnote omitted, emphasis supplied).

The Supreme Court left no room for doubt that a defendant serving a trial subpoena, returnable the day of trial and not before, is not required to make any preliminary showing. Indeed, such a requirement impermissibly would infringe a defendant's constitutional rights to compulsory process, confrontation, presentation of a defense and due process. In his concurring opinion in *California v.Green*, 399 U.S. 149, 176 (1970), Justice Harlan indicated that the compulsory process and confrontation clauses of the Sixth Amendment "constitutionalize the right to a defense as we know it."

3

In *Washington v. Texas*, 388 U.S. 1, 18-19 (1967) the court noted that "[t]he right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present the defense."

A defendant in a criminal case does not have the vast array of investigative and compulsory tools federal prosecutors have at their fingertips, such as administrative subpoenas, grand jury subpoenas, immunity orders and contempt sanctions. This enormous imbalance makes the sole right to compel favorable evidence a defendant does possess – the trial subpoena – a requisite element of fundamental fairness.

    **2.**    **The Government Does Not Have Standing To File A Motion To Quash Subpoenas Directed To Third Parties**

The government makes no showing in its motion to quash that it has standing. It does not.

The general rule is that a party lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter. *See United States v. Nachamie*, 91 F.Supp.2d 552, 558 (S.D. N. Y. 2000) (holding that government did not have standing to quash subpoena directed to witness); *United States v. Tomison*, 969 F.Supp.2d 587, 596 (E.D. Cal. 1997) (same). In *Nachamie*, the trial court judge rejected the government's assertions that it had standing in its own right to move to quash because it had an interest in preventing undue lengthening of the trial, harassment of its witnesses and over-emphasis of its witnesses' credibility. *Id*. at 558-560. The court noted that those interests may be enough to confer standing in an appropriate case, but that they "cannot be applied uncritically." *Id*. at 560. The court observed that the documents sought by the defendant were created by and belonged to the parties subpoenaed, not the government, and held that "[s]urely, the concept of standing

was not meant to be so elastic" as to give the government a say anytime a defendant seeks production from a third party. *Id*.

The court also rejected the government's assertion that it had standing as a representative of the parties subpoenaed, some of whom had asked the government to move to quash the subpoenas. The court held that "the Government cannot undertake to act as counsel to its witnesses. … [T]he Government's interests and that of its witnesses are not identical and it would therefore be inappropriate for the Government's attorney to act as counsel to its witnesses." *Id.* at 560-561.

### 3. The Subpoenas Seek Relevant and Material Information Favorable To the Defense

For the reasons set forth above, the court should deny the motion to quash either because there has been no showing that the subpoenas are unreasonable and oppressive, or because the government does not have standing to bring the motion. But even if the court were to decide whether the subpoenas constitute a permissible exercise of compulsory process rights by a defendant in a criminal case or an invalid means of conducting discovery, the court should still deny the motion to quash.

In making that determination, the court should not apply the *Nixon* four part-test because that would unduly cramp Ms. Al Jader's rights to compulsory process, to present a defense and due process. As the court in *Nachamie* reasoned, the "high standard [in *Nixon*], of course, made sense in the context of a Government subpoena, especially one seeking evidence from the President. … A real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to

5

meet the same standard." *Id*. at 562.[1] *See also Tomison*, 969 F.Supp. at 593, n. 14 ("[t]he notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties"). If this is so, the *Nachamie* court reasoned, invoking *Nixon* and the language of Rule 17, "then the only test for obtaining the documents would be whether the subpoena was: (1) reasonable, construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond." 91 F.Supp.2d at 563.

The materials sought by the subpoenas the government has moved to quash clearly meet that test. Sophia and Rohimah each claim that they were paid only $300 per month and that work contracts stating that they were paid $1,500 per month are fraudulent. They also claim that they mailed or had other people wire all or almost all of the money they were paid to family members in Indonesia. Ms. Al Jader will contest the amount Sophia and Rohimah claim they were paid. To meet the government's evidence on this point, she seeks by subpoena categories of financial records that would show how much money Sophia and Rohimah wired home. Because the stated purpose for wiring money back to their home countries was to construct homes, the subpoenas also seek documents relating to the construction of homes and monies spent for that purpose.

---

[1] The court reached the merits of the motion to quash even though it held that the government lacked standing because one of the subpoena recipients retained his own lawyer and brought his own motion to quash.

The subpoenas also seek communications between witnesses. The relevance of those communications is patently obvious. If the complaining witnesses are corresponding and getting their stories straight, or discussing their testimony in any way, that is fair cross-examination fodder. There is a solid basis for this request. One of the complaining witnesses made a number of telephone calls to friends of Ms. Al Jader after she was removed from Ms. Al Jader's home in November, 2004. During these calls, she discussed Ms. Al Jader and her experience in Ms. Al Jader's home. The subpoena seeks documents that constitute or relate to all such communications.

The final category of documents sought by the subpoena focuses on promises, rewards and inducements to Sophia and Rohimah. The government seems to be saying that Ms. Al Jader should trust it's word that it has produced everything. On that score, this United States Attorney's Office does not have a very good track record. *See Ferrara v. United States*, 2006 WL 2294580 (1st Cir. Aug. 10, 2006); *Conley v. United States*, 415 F.3d 183 (1st Cir. 2005); *United States v. Diabate*, 90 F. Supp. 2d 140, 144 (D. Mass. 2000); *United States v. Mannarino*, 850 F. Supp. 57 at 71-2 (D. Mass. 1994).

In addition, this is not the typical promises, rewards and inducements scenario. The government has made extensive efforts to keep the complaining witnesses in the country. Part of that effort involved enlisting assistance from private agencies and private legal assistance with immigration matters. In addition, one of the complaining witnesses has stated in telephone calls to friends of Ms. Al Jader that she was living with a "police woman" and that a government agent, presumably the case agent FBI SA Snyder, and that the case agent, "was like a mother to her." Defendant is entitled to

know, and the jury is entitled to hear, every detail of every promise, reward and inducement in this very atypical situation.

The defendants are not fishing here. There are valid reasons for every request in the subpoena. The material sought is essential if Ms. Al Jader is to be in a position to meaningfully exercise her rights to confront and cross examine witnesses, meet the government's allegations and present a defense. *See United States v. McLaughlin*, 957 F.2d 12, 17 (1st Cir. 1992) (Sixth Amendment confrontation right guarantees "adequate opportunity to cross-examine adverse witnesses ... to impeach credibility and to expose the witnesses biases and possible motives for testifying"); *United States v. Boylan*, 898 F.2d 230, 254 (1st Cir.) cert. denied 498 U.S. 849 (1990) (on cross-examination, a defendant must be permitted to develop "a reasonably complete picture of the witness' veracity, bias and motivation"); *United States v. Moody*, 903 F.2d 321, 329 (1990)("the Sixth Amendment's confrontational guarantee includes an opportunity for effective cross-examination, to include impeaching the motivations of adversarial witnesses").

## Conclusion

For all of the foregoing reasons, the court should deny the government's motion to quash the subpoenas.

HANA AL JADER
 By her attorneys,

/s/ *Joseph J. Balliro*
Joseph J. Balliro, Sr.
 B.B.O. #002800
Balliro & Mondano
99 Summer Street, Suite 1800
Boston, MA 02110
(617) 737-8442

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
151 Merrimac Street
Boston, MA  02114
(617) 742-9099

### Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 24, 2006.

/s/ *E. Peter Parker*
E. Peter Parker