UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

vs.

HANA AL JADER

CR. NO.  05-10085-RCL

**UNITED STATES' MEMORANDUM IN RESPONSE TO
THE DEFENDANT'S SENTENCING MEMORANDUM**

**I.  Facts and Procedural History**

On March 29, 2005, a federal grand jury issued a ten-count indictment charging the defendant, Hana F. Al Jader, with Forced Labor, Document Servitude, Falsification of Records, Visa Fraud, and Alien Harboring.  The charges related to the defendant's treatment of two Indonesian women, Trimurnyati Bt Sukadi Dzalipa ("Tri") and Rohima Bt Lili Bakri ("Ro").

The defendant brought the two women to America in February 2003, to work as domestic servants.  Prior to coming to America, Tri and Ro worked for the defendant in Saudi Arabia.  The defendant, through employees and agents, assisted the women in obtaining visas.  As required by State Department regulations, a personal employment contract was supplied to the embassy acknowledging that the employer would pay the women a monthly salary of $1400, provide free room, board, and medical expenses, and would not withhold the women's passports or travel documents during their stay in the United States.

Tri and Ro worked for the defendant for the next 21 months, cooking, cleaning, serving meals, caring for the severely disabled Prince, and serving at frequent parties.  Despite the terms of their personal employment contracts, the women often worked more than eight hours a day and were

on call twenty-four hours a day. They received only a $300-a-month salary. The defendant confiscated the women's passports, making it difficult for them to leave her home. Indeed, Tri and Ro rarely left the home unescorted.

When the women's visas expired, the defendant, through an attorney, applied to the Bureau of Citizenship and Immigration Services ("BCIS") for a six-month visa extension. When reviewing the applications, BCIS requested a copy of the women's employment contracts. In response to this request, the defendant had contracts drafted which falsely stated that the women were being paid $1500 a month, working only eight hours daily, and being provided with free housing, food, and transportation in addition to their salaries. The BCIS granted Tri and Ro six-month visa extensions in reliance upon these false representations. After their extensions expired, however, the defendant continued to employ Tri and Ro in her home for an additional eleven months in order to maintain a cheap source of labor.

On September 5, 2006, the defendant pleaded guilty to Counts 7-10 of the Indictment which charged her with two counts of Visa Fraud and two counts of Harboring for Financial Gain. A Presentence Investigation Report (PSR) was prepared which recommended that the defendant's total offense level be a level 10. See PSR ¶ 31. Because the defendant has a criminal history level of I, the resulting guideline range is 6-12 months. Id. at ¶96. The range thus falls into Zone B of the Sentencing Table.

The defendant does contest the guideline calculation. She has, however, filed a sentencing memorandum asking this Court to sentence her to a term of probation with a period of home confinement. See Defendant's Sentencing Memorandum at 1. She further requests that this Court credit her with the time she already spent in home confinement while on pretrial release. Id. The

defendant argues that such a sentence is appropriate based upon (1) her role as sole care giver to her disabled husband; (2) the negative impact her incarceration will have on her children; and (3) the fact that she has been generous to friends within her community. The government urges this Court to sentence the defendant to a term of imprisonment. Furthermore, in the event that this Court determines that a sentence of home detention is appropriate, it should reject the defendant's request that her sentence be deemed fulfilled by the time she has spent in pretrial home detention.

## II. Legal Analysis

As explained in the PSR, deportable aliens are generally not considered acceptable candidates for alternatives to incarceration such as home detention or community confinement. See PSR at ¶ 103 (home detention); 105 (community confinement); see also United States v. Simalavong, 924 F.Supp. 610, 610 (D.Vt.1995) (defendants sought downward departure to Zone A since, as Canadian citizens, they were ineligible for non-incarceratory alternatives of Zone B). There is obviously a risk that such aliens may return to their countries of origin without fulfilling the terms of their sentences. The PSR suggests, however, that factors which may warrant imposition of a non-guideline sentence may also warrant imposition of home detention. See PSR at ¶¶ 103 and 105.[1]

Here, home detention is inappropriate based upon the totality of the defendant's criminality. The defendant knowingly sponsored false statements to two different federal agencies on two separate occasion. She then flouted immigration law by allowing Tri and Ro to remain in her

---

[1] Because the defendant's offense falls within Zone B, she may be given probation only if that probation is conditioned upon a requirement of intermittent confinement, community confinement, or home detention. See U.S.S.G. § 5B1.1(a)(2). If the defendant's sentencing range fell within Zone A, then she would be eligible for probation without any such conditions.

household after their visas expired. More importantly, she took advantage of two unsophisticated Indonesian women, luring them to this country with false promises of high wages and light work, only to require them to work long hours for low wages. Once here, the women's documents were confiscated, essentially leaving them stranded in a foreign country without the means or ability to return to their home countries or to find alternate employment in the United States. All of this was done so that the defendant could have the benefit of domestic help without having to pay prevailing American wages.

The defendant argues that home confinement is appropriate in her case because she has an "irreplaceable role" as care giver to her husband, Prince Mohammad. Under the Sentencing Guidelines, family ties and responsibilities are "not ordinarily relevant in determining whether a departure may be warranted." See U.S.S.G. § 5H1.6. In the pre-Booker era, a court could depart for such circumstances only if they were out of the ordinary. United States v. Rivera-Maldonado, 194 F.3d 224, 236 (1st Cir. 1999).

The prince's disability, while tragic, is not a grounds for departure or imposition of a non-guideline sentence. Nor is it a reason for a sentence of home detention. Contrary to the defendant's arguments, others may be employed to care for the prince. The defendant herself has admitted that she receives a stipend of $ 100,000 a year from the Saudi Royal family and that she may request additional funds when necessary. See PSR at ¶ 88. Thus, she can afford to hire a caretaker for the prince. She implies, however, that for cultural and religious reasons, she is the only one who may care for her husband. See Defendant's Sentencing Memorandum at 6. Her argument, however, is contradicted by the factual predicate of the plea agreement which illustrates that, historically, domestic servants have played a role in caring for the prince. By pleading guilty to the offense, the

defendant agreed that the duties Tri and Ro performed while in her service included "caring for the severely disabled Prince." See factual predicate. Indeed, Veronica Pedroza, a former domestic servant, was employed specifically to care for Prince Mohammad. See Pedroza 302 **(Attached???).**

The defendant next argues that her children, who "rely on their mother for everything," will suffer if she is incarcerated. See Defendant's Sentencing Memorandum at 6. As noted by the First Circuit, "disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." Rivera-Maldonado, 194 F.3d at 236 (internal citations and alterations omitted). Although the defendant's minor children may miss her company and guidance, it is clear from the defendant's submission to this Court that they have been placed with relatives. See Defendant's Sentencing Memorandum at 7-9. Thus, they are in no danger of suffering abuse, neglect, or poverty in her absence. Their hardship will thus be similar to that suffered by the families of all who are incarcerated.

Finally, the defendant argues that incarceration is inappropriate because "her community needs her." See Defendant's Sentencing Memorandum at 9. Upon close inspection, this argument amounts to nothing more than a list of charitable works done by the defendant. Under the Guidelines, such factors are normally not relevant in determining whether a departure is warranted. See U.S.S.G. § 5H1.11. Similarly, the fact that a wealthy woman has, on occasion, engaged in acts of charity is not grounds for the imposition of a non-guideline sentence or for the imposition of home detention instead of incarceration.

Finally, assuming that this Court determines that home confinement is appropriate, it should not credit the defendant for time previously spent in home detention. That time was not imposed as punishment but merely to secure the defendant's appearance for trial. It did little to disrupt the

defendant's life and routine. Thus, it does not serve as adequate punishment for this crime. Specifically, it does not provide adequate deterrence to criminal conduct. See 18 U.S.C. § 3553(a)(2)(B).[2]

### III. Conclusion

For all these reasons, the government requests that this Court impose a sentence of incarceration.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ S. Theodore Merritt
 S. THEODORE MERRITT
Assistant U.S. Attorney

BARBARA KAY BOSSERMAN
Trial Attorney
Criminal Section
Civil Rights Division
U.S. Department of Justice

---

[2] Should this Court impose a sentence of incarceration as requested by the government, it may not, of course, credit the defendant's prior home detention against that period of incarceration. See Reno v. Koray, 515 U.S. 50, 65 (1995) ("[T]he time respondent spent at the Volunteers of America community treatment center while "released" on bail pursuant to the Bail Reform Act of 1984 was not "official detention" within the meaning of 18 U.S.C. § 3585(b). Respondent therefore was not entitled to a credit against his sentence of imprisonment.").

**CERTIFICATE OF SERVICE**

    I, S. Theodore Merritt, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

/s/ S. Theodore Merritt
S. THEODORE MERRITT
Assistant U.S. Attorney